In the Matter of the APPLICATION FROM the MINNESOTA ORCHESTRAL ASSOCIATION FOR A VARIANCE FROM MINN. R. 7030.0040 FOR the OPERATION OF the PROPOSED BROOKLYN PARK PERFORMING ARTS CENTER Located at Lot 1, Block 1, and Outlots B, C, and D, Preliminary Plat of the Brooklyn Park Performing Arts Center, Township 119 North, Range 21 West, Hennepin County, Minnesota.

No. C9–99–1855.

Court of Appeals of Minnesota.

March 21, 2000.

Thomas H. Goodman, Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, for relator.

Walter H. Rockenstein, II, Delmar R. Ehrich, Elizabeth Hendricks Schmiesing, Faegre & Benson, Minneapolis, for respondent Minnesota Orchestral Association.

Mike Hatch, Attorney General, Riddhi Jani, Assistant Attorney General, St. Paul, for respondent Minnesota Pollution Control Agency.

Considered and decided by TOUSSAINT, Chief Judge, HARTEN, Judge, and HUSPENI, Judge.*

## OPINION

TOUSSAINT, Chief Judge.

The Minnesota Pollution Control Agency granted respondent Minnesota Orchestral Association a noise variance for its proposed amphitheater. Relator, Preserve Our Environment, an environmental group, challenges the noise variance, arguing it is unsupported by the evidence and is arbitrary and capricious. Because record evidence supports the agency's decision, which is not arbitrary or capricious, we affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

## FACTS

Respondent Minnesota Orchestral Association (MOA), a nonprofit corporation in charge of funding the Minnesota Orchestra, wants to build an amphitheater in the City of Brooklyn Park (the city). The amphitheater, known as the Brooklyn Park Performing Arts Center (BPPAC), will be used for rock and pop concerts as well as orchestra performances. The city rezoned the area and issued a conditional use permit for the BPPAC. MOA applied to respondent Minnesota Pollution Control Agency (MPCA) for a variance because some events at the proposed amphitheater will exceed the permitted level of noise.

On its amended application, MOA showed that 14 homes and a church are actually within the area that will be affected by the noise. Church services do not occur during the periods affected by the noise, and several of the homes are marked for sale to a commercial developer because the city plans commercial redevelopment of the area.

Relator Preserve Our Environment (POE), a non-profit corporation of about 2,000 people who live within and adjacent to the area that would be affected by the noise, challenges the variance.

## ISSUES [1]

1. Is the variance unsupported by substantial evidence?

2. Is the variance arbitrary and capricious?

## ANALYSIS

*Standard of Review*

 Minn.Stat. § 14.69 (1998) provides that this court may reverse or modify an agency decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions or decisions are

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

POE argues that the variance violates (e), because it is unsupported by the evidence, and (f), because it is arbitrary and capricious.

*1. Is the variance unsupported by substantial evidence?*

 The rule governing variances is Minn. R. 7030.0080 (1997):

If, upon written application of the responsible person, the agency finds that by reason of exceptional circumstances strict conformity with any provisions of any noise rule would cause undue hardship, would be unreasonable, impractical, or not feasible under the circumstances, the agency may permit a variance upon the conditions and within the time limitations as it may prescribe for the prevention, control, or abatement of noise pollution in harmony with the intent of the state and any applicable federal laws.

MPCA granted the variance on the ground that "[s]trict conformity with the noise standards would be unreasonable and im-

---

1. POE also argues that the variance granted to MOA is illegal because the city, without obtaining a variance, violated the Noise Control Requirement when it amended its zoning ordinance to issue a permit to BPPAC. But POE offers no support either for its view that a variance granted to one entity is illegal because another entity should also have applied for a variance or for its view that munic- ipalities cannot amend zoning ordinances and issue conditional-use permits without first obtaining MPCA variances for any future non-conforming use. Moreover, the city is not a party to this appeal, and MPCA, not POE, would have standing to challenge the city's failure to obtain a variance. We therefore decline to address this issue.

practical for the reasons stated in Finding Nos. 39–42." [2]

POE specifically challenges MPCA Finding 39.

The alternatives available to MOA if a variance is not granted for the fifteen receptors are unreasonable and impractical. One alternative is for MOA to purchase all the affected properties and then request the city to change the land use so that the BPPAC's predicted noise levels fall within the noise area classifications. Even if MOA was financially able to purchase the properties, and then successfully petition the city to change the land use to a non-residential category, the result would be impractical: there would be a number of residential properties lying vacant and unused. This is a draconian means of moving forward without a variance and is not compatible with the city's stated plans for development of the area. Moreover, this is an impractical solution for property owners and MOA, and results in an unreasonable application of the noise rules.[3]

MOA informed MPCA that (1) the houses affected by the noise were likely to be converted to uses compatible with the city's plan to develop the area for commercial, industrial, and office use; (2) seven houses were already sold or offered for sale; (3) the owners of four houses had written to say they had no objection to the variance, (4) three houses would be taken when a planned highway overpass is constructed, and (5) the remaining two houses belonged to owners who had refused to negotiate with MOA to discuss market-value purchases or noise insulation. These statements support Finding 39, and POE does not refute any of them on evidentiary

grounds. Therefore, the finding is supported by substantial evidence.

**2. Is the variance arbitrary and capricious?**

■ The mere existence of more than one reasonable opinion does not make an agency's decision arbitrary or capricious. *In re Continental Tel. Co.*, 358 N.W.2d 400, 403 (Minn.App.1984), *aff'd in part, rev'd in part and remanded*, 389 N.W.2d 910 (Minn.1986).

> An agency ruling will be deemed arbitrary and capricious if the agency relied on factors which the legislature had not intended it to consider, if it entirely failed to consider an important aspect of the problem, if it offered an explanation for the decision that runs counter to the evidence, or if the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*In re Space Center Transport,* 444 N.W.2d 575, 581 (Minn.App.1989) (citation omitted), *review dismissed* (Minn. Oct. 19, 1989). POE contends that MPCA failed to consider (1) that the violations were "planned;" (2) that the city had an ordinance prohibiting the activities the variance permitted; and (3) that MPCA erred in relying on the property owners' consent to the variance.

■ First, POE argues that MPCA failed to consider that MOA had planned its violations of the noise standard. POE argues that noise variances should be issued only when the violation is required by law, "uncontrollable, infrequent, or unpredictable," or occurs after the fact of construction, but POE offers no support for this argument.

> POE's implication, MPCA was not required to find hardship before granting a variance.

**2.** POE argues that MPCA erred in not considering MOA's hardship, or lack thereof, in complying with the noise standards if a variance were denied. But hardship is not a necessary criterion; it is an alternative to being "unreasonable, impractical, or not feasible under the circumstances." Contrary to

**3.** POE claims there are seven "logical inconsistencies" in this finding, but that is not the issue: the issue is whether the finding is supported by substantial evidence.

But MPCA procedure is designed to avert unpredicted noise violations, not to grant variances for them. That procedure requires experts to prepare environmental assessment worksheets and environmental impact statements to determine whether a variance will be needed before the violation occurs. If variances could be granted only after the fact of a violation, as POE urges, there would be no point to the process.

 Second, POE contends that the MPCA failed to consider that a city ordinance prohibiting "noise * * * that will in any way have an objectionable effect" prohibits the activities the variance will permit. POE implies that MPCA lacks authority to grant a variance permitting what a municipal ordinance forbids and claims that by issuing a variance MPCA "unilaterally repeal[s] a city ordinance."

But MPCA has not repealed the ordinance: no one except BPPAC has been granted a variance from it, may violate it, and the noise concerts will be allowed to produce is subject to extensive regulation and supervision. Moreover, the city itself has authorized BPPAC and enabled it to go forward. Therefore, MPCA did not err in failing to consider the ordinance.

 Finally, POE contends that MPCA should not have considered the fact that most of those whose properties will be affected do not object to the variance and that their consent to BPPAC was "purchased." But, evidence shows that many of the properties have been or will be sold to a commercial developer; the owners of those properties had no reason to withhold consent. The record also supports MOA's willingness to negotiate with property owners in discussing the market-value purchase or noise insulation of their property.[4] MPCA did not err in considering the prop-

erty owners' consent as a factor in granting the variance.

## D E C I S I O N

The variance is supported by substantial evidence accumulated after years of consultation and investigation and is not arbitrary and capricious because MPCA neither failed to consider an important aspect of the problem nor relied on a factor the legislature did not intend it to consider. We therefore affirm.

**Affirmed.**

---

4. POE relies on *McGuire v. County of Scott,* 525 N.W.2d 583, 584 (Minn.App.1994) (holding a county unable to assert the affirmative defense of "no feasible and prudent alternative" to a claim brought under the Minnesota Environmental Rights Act (MERA)), *review denied* (Minn. March 14, 1995). *McGuire* is distinguishable; this case was not brought under MERA, and MOA is not precluded from asserting that it has "no feasible and prudent alternative" to BPPAC.